1

2

3

4

5

6

7

8

9

10          IN THE UNITED STATES DISTRICT COURT

11          FOR THE EASTERN DISTRICT OF CALIFORNIA

12   UNITED STATES OF AMERICA,

13                  Respondent,                    No. CR S-95-411 GEB KJM P

14          vs.

15   CONRAD GARCIA-GUIZAR,                    <u>ORDER AND</u>

16                  Movant.                    <u>FINDINGS AND RECOMMENDATIONS</u>

17   _____/

18          Movant is a federal prisoner proceeding pro se with a motion to vacate, set aside,

19   or modify his sentence under 28 U.S.C. § 2255.  In addition, movant and his sister, Ana Garcia,

20   have filed a motion for the return of the $39,770, which the Ninth Circuit Court of Appeals found

21   was not subject to forfeiture.

22          The court appointed counsel and held an evidentiary hearing as to movant's

23   claims of ineffective assistance of counsel during the plea negotiation process and on appeal.

24   /////

25   //////

26   /////

1

A.  Procedural And Factual Background

On July 18, 1996 a superseding indictment was filed, charging petitioner with conspiracy to distribute methamphetamine, distribution of methamphetamine, possession of marijuana with the intent to distribute, and forfeiture.  CR[1] 67.

A jury returned a verdict of guilty on all counts and found that $43,070 listed in count six was subject to forfeiture.  CR 80 (Minutes of 7/30/96).  Movant was sentenced to a total term of 135 months and the court found movant did not have the ability to pay a fine.  CR 94, 99; 12/6/96 RT[2] 13.

Movant appealed his conviction and sentence to the United States Court of Appeals.  The Ninth Circuit affirmed his convictions on counts one, two and three, but reversed the conviction on count four (one of the methamphetamine distribution charges), finding the evidence insufficient.[3]  United States v. Garcia-Guizar, 160 F.3d 511, 517 (9th Cir. 1998).  The appellate court also found the verdict insufficient to support the forfeiture of the entire $43,070 found in movant's storage locker, but ruled the forfeiture of $4,300 of that amount, which comprised recorded funds from the two substantive methamphetamine convictions the court upheld, was subject to forfeiture.  Id. at 519.  Finally, the Court of Appeals found the district court's reliance on movant's perjury to impose a two level increase for the obstruction of justice improper.  The court vacated the sentence and remanded the case for resentencing.  Id. at 525.

The presentence report prepared in anticipation of the resentencing recalculated the offense level based on the amount of actual methamphetamine rather than the mixture used to calculate the offense level for the first sentencing proceedings.  Revised Presentence Report

/////

---

[1]  "CR" stands for Clerk's Record and in this case comprises the docket.

[2]  "RT" stands for Reporter's Transcript.

[3]  Movant did not challenge the conviction for possessing marijuana with the intent to distribute.

(RPSR) ¶ 23.  This resulted in an offense level of 32 and an ultimate guideline range of 168 to 210 months.  Id. ¶¶ 29, 62.

The court resentenced movant to a term of 168 months and, in light of the reversal of the bulk of the forfeiture verdict, found that movant had the ability to pay a fine of $17,500.  CR 128.  Movant again appealed.  In United States v. Garcia-Guizar, 234 F.3d 483 (9th Cir. 2000), the Court of Appeals accepted movant's claim that the district court's finding of drug quantity by preponderance of the evidence violated Apprendi v. New Jersey, 530 U.S. 466 (2000), but found movant was not prejudiced by the reliance because the error did not have an impact on the sentence movant actually received.  Garcia-Guizar, 234 F.3d at 488-89.  It also found no error in the district court's finding that movant was an organizer, leader or manager within the meaning of U.S.S.G. § 3B1.1(c).  Id. at 491.  Finally, it found that the increased sentence on remand was not vindictive, but rather was the result of the district court's correction of an error, which "the district court was obligated to correct."  Id. at 489.

In its first opinion, the Court of Appeals summarized the evidence against movant:

> Garcia's convictions derive from three undercover methamphetamine transactions between co-defendant Israel Cruz and Special Agent Lupe Castillo Baker, which took place on June 8, 1995, June 19, 1995, and July 27, 1995. Each of the methamphetamine sales occurred at the Crazy Taco Wagon eatery in Chico, California. Law enforcement officers conducted surveillance of each transaction, and Baker used pre-recorded government funds to purchase the methamphetamine.
> Twenty minutes after first meeting with Baker on June 8, 1995, Cruz was seen walking across the street from the Crazy Taco Wagon to speak with Garcia, who was sitting in the driver's seat of a blue van. Garcia then drove the van to an auto body shop and back to an apartment complex near the Crazy Taco Wagon. Cruz soon returned to the Crazy Taco Wagon and sold Baker 1/4 pound of methamphetamine for $1800. During the transaction, Cruz again left Baker to speak with Garcia. Ten minutes after Cruz returned to Baker and completed the sale, Garcia left the scene and drove to a shopping mall. Garcia then drove from the mall to a mini-storage facility in Chico. He entered one of the lockers, emerged and drove to Cruz's home. Garcia went inside briefly and then departed.

Prior to Cruz's June 19, 1995, sale to Baker of ½ pound of methamphetamine for $3500, Garcia and Cruz were seen talking near a fence surrounding the back of an apartment complex near the Crazy Taco Wagon. Garcia had picked up Cruz in a BMW and driven to the far end of the apartment complex parking lot. Garcia then returned Cruz to his own car at the near side of the parking lot. A few minutes later, Baker was met by a woman at the Crazy Taco Wagon. The two walked to the fence, where Baker spoke briefly with Cruz. Baker then left the Crazy Taco Wagon. Garcia drove over to Cruz in the BMW and opened the trunk and the two looked in the trunk. Baker then returned to the Crazy Taco Wagon parking lot and concluded the drug transaction with Cruz.

Cruz sold Baker 1/4 pound of methamphetamine for $1800 at the Crazy Taco Wagon on July 27, 1995. However, no evidence in the record suggests that Garcia was present at or involved in this transaction.

About a month later, law enforcement officers executed search warrants at Garcia's home and at a storage locker that he rented. From Garcia's home the government seized a gun, a pager, a paper that the government describes as a "pay-owe" sheet, and keys to the storage locker. The subsequent search of the storage locker yielded sixteen packages of marijuana and $43,070 in cash, some of which was pre-recorded government funds from two of the methamphetamine sales, in a brown paper bag. Of the $1800 in pre-recorded government funds used for the June 8 transaction between Baker and Cruz, $1600 was found in the brown paper bag in Garcia's locker. Of the $3500 used for the June 19 transaction, $2700 was found in the paper bag. However, the record does not indicate that any of the pre-recorded funds used in the July 27 transaction were recovered from Garcia's storage locker.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

At trial, Garcia admitted that he possessed the marijuana found in the storage locker and that he sold marijuana. However, he estimated that at least 80 percent of the $43,070 he kept in the storage locker came from legitimate, non-drug related business. He testified that he earned a living by gardening work, farm work, and by fixing up and reselling cars. Garcia denied having any involvement with methamphetamine trafficking.

/////

/////

/////

/////

/////

> Among the government's witnesses was Louise Hill, who worked at the storage facility where Garcia rented a locker. Hill testified that Garcia rented the locker under the false name of "Carlos Guizar." Co-defendant Cruz testified for the defense. Cruz admitted that he had pled guilty in connection with the methamphetamine sales but testified that Garcia had nothing to do with buying or selling methamphetamine. On cross-examination, Cruz testified that his source for the undercover sales was a man named Gilberto Cisneros.

Garcia-Guizar, 160 F.3d at 514-16.

Movant has now filed a motion to vacate his conviction and sentence, alleging that he did not receive the effective assistance of counsel for a variety of reasons: (1) counsel at the resentencing failed to argue for a downward departure based on movant's post-sentence rehabilitative conduct (ground one); (2) counsel "allow[ed] the probation officer to conclude that movant could pay a fine after the Ninth Circuit reduced the amount of the forfeiture (ground two); (3) before proceeding with the appeal, counsel should have informed movant of the possibility that he could receive a longer sentence on remand (ground four); (4) counsel was ineffective in failing to argue for a downward departure on the ground that movant had no control over the purity of the methamphetamine (ground seven); (5) counsel failed to argue for a downward departure on the ground that movant, an alien, was not eligible to participate in the Bureau of Prisons' (BOP) drug treatment program and thus earn a year off his sentence (ground eight); (6) trial counsel failed to "properly communicat[e]" movant's desire to plead guilty with or without a plea agreement and gave him improper advice about the results of a trial (ground nine).

Movant also argues that the district court violated his right to equal protection by finding, in essence, that the money that it found available for a fine was his, not his relatives' (ground three); the imposition of a five year term of supervised release violates Apprendi, 530

/////

/////

/////

5

U.S. 466 (ground five);[4] and the court's determination of drug quantity in the absence of a jury finding also violates <u>Apprendi</u> (ground six).

The government argues that the claims are barred because they were not raised on direct appeal or because they were raised, and decided adversely to movant, on direct appeal.

In addition, movant and his sister Ana Garcia have filed a motion for return of that portion of the money seized from his storage locker, but which the Court of Appeals found was not properly subject to forfeiture.

B. <u>Ineffective Assistance Of Counsel–Alleged Errors At Resentencing</u>

When a movant has neither objected to an error at trial nor challenged it on appeal, he may not raise it in a § 2255 motion without a showing of cause for his failure to object and prejudice from the identified error. <u>United States v. Frady</u>, 456 U.S. 152, 167-68 (1982). Claims of ineffective assistance of counsel, however, can be raised for the first time on a § 2255 motion. <u>United States v. Span</u>, 75 F.3d 1383, 1387 (9th Cir. 1996). Movant's claims are, for the most part, cognizable.

The federal law on claims of attorney ineffectiveness is clear:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense.

<u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). "[T]he performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." <u>Id</u>. at 688. To this end, petitioner must identify the acts or omissions alleged not to have been the result of reasonable professional judgment. <u>Id</u>. at 690. The federal court then must determine whether in light of all the circumstances, the identified acts or omissions were outside the wide range of professional competent assistance. <u>Id</u>. "We strongly presume that counsel's conduct was within

---

[4] Movant withdrew this claim of error in his reply.

6

the wide range of reasonable assistance, and that he exercised acceptable professional judgment in all significant decisions made." Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing Strickland, 466 U.S. at 689). The defendant must overcome the presumption that the challenged act or omission "might be considered sound trial strategy." Strickland, 466 U.S. at 689.

It also is petitioner's burden to establish prejudice: "A defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. A reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." Pizzuto v. Arave, 280 F.3d 949, 955 (9th Cir. 2002) (quoting Strickland, 466 U.S. at 697).

### 1. Post-Sentencing Rehabilitation (Ground One)

Movant argues that counsel failed to argue for a downward departure based on his post-sentencing rehabilitative efforts. He has attached certificates showing he obtained his GED and took carpentry and electronics classes, and his declaration averring that he built cabinets for low income housing units. Motion, Exs. B-D & Declaration of Conrad Garcia-Guizar (Garcia Decl.) ¶ 3. He claims he asked Assistant Federal Defender Ann McClintock, the lawyer who represented him on appeal, to make this argument, but that David Porter and Dennis Waks, the assistant federal defenders who appeared with him at resentencing, did not. Garcia Decl. ¶¶ 3-7. An attorney's failure to ask for a downward departure may constitute ineffective assistance of counsel if there is a basis for the departure. United States v. Sera, 267 F.3d 872, 874 (8th Cir. 2001).

When movant was resentenced in 1999, federal courts were exploring permissible bases for downward departures in light of Koon v. United States, 518 U.S. 81 (1996), the broad

impact of which has been limited by later amendments to the Guidelines. <u>Koon</u> held that sentencing courts could depart in cases that featured "aggravating or mitigating circumstances of a kind or degree not adequately taken into consideration by the Commission." <u>Id</u>. at 94. The Court explained:

> If a factor is unmentioned in the Guidelines, the court must, after considering the "structure and theory of both relevant individual guidelines and the Guidelines taken as a whole," . . . decide whether it is sufficient to take the case out of the Guideline's heartland. The court must bear in mind the Commission's expectation that departures based on grounds not mentioned in the Guidelines will be "highly infrequent."

<u>Id</u>. at 95. In the wake of <u>Koon</u>, the Ninth Circuit has indicated that post-sentencing rehabilitation might be the basis for a downward departure if it was "highly successful" or present to an exceptional degree. <u>United States v. Green</u>, 152 F.3d 1202, 1208 (9th Cir. 1998).

Movant has not shown that counsel's failure to ask for the downward departure was outside the range of reasonable assistance. The law of the circuit was that exceptional or successful post-sentencing rehabilitative efforts might justify a departure. <u>Id</u>. Movant's eight months of building cabinets for low income housing and the completion of his GED and vocational classes are commendable, but not exceptional. In addition, most of the other certificates he has provided show only that he participated in jogging and walking programs, hardly the stuff of rehabilitation. Mot., Exs. E, F.

Moreover, petitioner has not shown the prejudice required by <u>Strickland</u>. A downward departure is a matter of discretion, not of right. In this case, at resentencing the district court was concerned that any downward departure be clearly justified. 8/13/99 RT 31-32. In light of <u>Koon</u>'s recognition that departures were the exception, this court cannot say the district court would have departed downward on this record of rehabilitation.

/////

/////

/////

2.  <u>Failure To Object To The Amount Of The Fine</u> (Ground Two)

Movant argues that counsel failed to argue that he did not have the ability to pay the $17,500 fine the probation officer recommended when the case had been remanded for resentencing.

In <u>United States v. Thiele</u>, 314 F.3d 399 (9th Cir. 2002), the movant filed a § 2255 motion alleging that counsel had been ineffective for failing to argue movant was unable to pay the restitution imposed at sentencing along with other claims seeking release from custody.  The court affirmed the district court's denial of his motion:

> 28 U.S.C. § 2255 is available to prisoners claiming the right to be released from custody.  Claims for other types of relief, such as relief from a restitution order, cannot be brought in a § 2255 motion, whether or not the motion also contains cognizable claims for release from custody.
>
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
>
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
>
> Nor does it matter that Thiele couched his restitution claim in terms of ineffective assistance of counsel.

<u>Id</u>. at 400, 402; <u>see also</u> <u>United States v. Kramer</u>, 195 F.3d 1129 (9th Cir. 1999); <u>United States v. Segler</u>, 37 F.3d 1131, 1136-37 (5th Cir. 1994) (challenge to counsel's effectiveness for failing to object to a fine not cognizable on § 2255 motion).

3.  <u>Failure To Argue Lack Of Control Over The Purity Of The Methamphetamine</u> (Ground Seven)

In <u>United States v. Mendoza</u>, 121 F.3d 510, 513 (9th Cir. 1997), the Ninth Circuit recognized a district court's authority to depart downward on the ground that the defendant "had no control over, or knowledge of, the purity of the methamphetamine that he delivered."  <u>See also</u> <u>United States v. Sanchez-Rodriguez</u>, 161 F.3d 556, 560 (9th Cir. 1998).  The <u>Mendoza</u> court recognized that while the purity of methamphetamine in a defendant's possession might suggest

/////

a prominent role in the criminal enterprise, this reasoning might not be applicable to a person who was unaware of the purity of the drugs. Mendoza, 121 F.3d at 515.

At the resentencing in this case, counsel argued that movant was a minor participant, but did not argue that he lacked control over the purity of the drugs. 8/13/99 RT 19. This court need not reach the question whether counsel was ineffective; movant cannot show prejudice.

In rejecting movant's argument that he was a minor participant, the district judge relied on his memory of the evidence developed at trial and on the revised presentence report, which noted that co-defendant Cruz obtained the methamphetamine from movant and that some of the pre-recorded money used by BNE agents to purchase the drugs was found in movant's storage locker. RPSR ¶¶ 4-5. The court said:

> He's not a minor participant. I looked at the pre-sentence report. I reflected on the trial, because I did feel that if I could downwardly depart, I should. But I do not believe that that's an appropriate basis for downwardly departing. It is clear that he was intimately involved in this offense and he was a major participant in that offense, and he appears to be the individual who was the mastermind behind it and the supplier of the drugs.

8/13/99 RT 30. These findings demonstrate that the district court would not have accepted a defense argument for a downward departure on the ground that movant had no control over the purity of the drugs.

4. Failure To Argue For Downward Departure Based On Status As An Alien (Ground Eight)

Movant argues that counsel was ineffective for failing to seek a downward departure on the ground that his status as a deportable alien has had a negative impact on his sentence in three ways: (1) he is not eligible for the BOP's drug treatment program, successful completion of which would give him a year off his sentence; (2) he is not eligible to serve the last six months of his sentence in a half-way house; and (3) he cannot serve any portion of his sentence in a minimum security facility.

The government counters that movant has not demonstrated that any of these factors take his case out of the heartland for sentencing guidelines purposes.

Before Koon, the custodial restrictions on a deportable alien were not deemed an appropriate basis for a downward departure. United States v. Restrepo, 999 F.2d 640, 645 (2d Cir. 1993). However, in United States v. Charry Cubillos, 91 F.3d 1342 (9th Cir. 1996), the Ninth Circuit recognized that sentence-related disabilities imposed on deportable aliens, such as ineligibility for placement in a minimum security facility or for placement in a halfway house, may be the basis of a downward departure if "certain aspects of the case [are] found unusual enough for it to fall outside the heartland of cases . . . ." Id. at 1343 (quoting Koon v. United States, 518 U.S. 81 (1996)). The Ninth Circuit found that the district court had not made an adequate record supporting the downward departure in the case and so remanded to allow the court to make the "refined assessment of the many facts bearing on the outcome." Charry-Cubilos, 91 F.3d at 1345.

The Eighth Circuit has considered the nature of the "refined assessment" that a district court must undertake before departing downward. In United States v. Lopez-Salas, 266 F.3d 842, 847 (8th Cir. 2001), the court recognized that 18 U.S.C. § 3621(e)(2)(B) gives the BOP discretion whether to grant sentence reductions to inmates who complete drug treatment. Moreover, the BOP has found certain categories of prisoners, including deportable aliens, ineligible for the sentence reduction under this section. See Bowen v. Hood, 202 F.3d 1211, 1219 (9th Cir. 2000) (prisoners whose crimes of conviction involved a firearm are ineligible for reduction); Furguiel v. Benov, 155 F.3d 1046 (9th Cir. 1998) (prisoner whose prior record included a robbery not eligible for early release); 28 C.F.R. § 550.58. In light of these other exclusions, "[b]eing categorically excluded from receiving early release is not, by itself, an unusual or atypical factor. . . ." United States v. Lopez-Salas, 266 F.3d at 848. Movant has not shown that his "individual circumstances" rendered his categorical exclusion from sentence reduction a proper basis for a downward departure.

The Eighth Circuit also has recognized that increased severity in the conditions of confinement for a deportable alien, including ineligibility for half-way house placement under 18 U.S.C. § 3624(c), may be grounds for a downward departure; however

> the fact that a deportable alien may be subject to some increases in the severity of the conditions of confinement alone is not sufficient to make his case atypical or unusual.
>
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
>
> Therefore a departure on this basis is only appropriate in exceptional circumstances, such as where there is a substantial, undeserved increase in the severity of conditions of confinement, which would affect a substantial portion of a defendant's sentence. . . .

United States v. Lopez-Salas, 266 F.3d at 849-50; see also United States v. Angel-Martinez, 988 F.Supp. 475, 484 (D.N.J. 1997) (no downward departure because alien ineligible for half-way house placement).

Movant has made no showing of exceptional circumstances personal to him, which could have formed the basis of a motion for a downward departure on these grounds. He has not borne his burden of showing counsel's ineffectiveness for failing to seek it.

C.  The Imposition Of The Fine (Ground Three)

Petitioner argues that the imposition of the fine violated his right to equal protection because the money found in his storage locker, which presumably will be used to satisfy the fine, did not belong to him, but rather to his relatives.

As noted above, however, this challenge to the imposition of the fine is not cognizable in a § 2255 motion. Thiele, 399 F.3d at 400.

D.  The Resentencing Violated Apprendi

Movant argues that the conversion of the mixture to pure methamphetamine, and then to the equivalent in marijuana for sentencing purposes, violated Apprendi v. New Jersey, 530 U.S. 466 (2000), because the indictment charged and the jury found only that he possessed for sale a mixture or substance containing methamphetamine. The government counters that the

12

issue is waived because it was not argued on appeal and that the Ninth Circuit found any Apprendi error to be harmless. Garcia-Guizar, 234 F.3d at 489.

As noted above, an issue is not cognizable in a § 2255 motion if the claim of error was not raised in the trial court or argued on appeal, absent a showing of cause for the two failures to raise the issue and prejudice from the omission. Frady, 456 U.S. at 167-68. Movant has made no attempt to show cause for his failure to pursue this attack at the resentencing or on the appeal from resentencing. The issue is not cognizable here.

E. Ineffective Assistance Of Counsel–Failure To Communicate Movant's Desire To Plead To The Indictment (Ground Nine)

   1. Factual Background

Movant argues that trial counsel, Charles Benninghoff III, was ineffective because he failed to pursue movant's desire to plead to the indictment without a plea agreement. Moreover, counsel predicted that movant would be convicted only of the possession of the marijuana, would receive a five year sentence, and could immediately be transferred to Tijuana to serve his sentence. Garcia Decl. ¶¶ 16-23. Movant avers he would not have gone to trial had trial counsel not misadvised him. Id. ¶ 27.

The government argues that movant has offered only conclusory, self-serving statements and cannot establish prejudice.

In his reply, movant offers evidence that trial counsel resigned from the bar pending disbarment proceedings stemming from a criminal conviction and that earlier disciplinary proceedings against Benninghoff had been based on counsel's solicitation of employment directed to Mexican nationals incarcerated in the Metropolitan Correctional Center; in those solicitations, counsel suggested he had a relationship with the Mexican government that would make it easier for him to arrange for transfers to Mexican prisons. Reply, Exs. H-K.

The record shows that the parties did engage in negotiations. Trial counsel failed to appear for a status hearing on April 26, 1996, but the prosecutor informed the court he had

13

1  tendered a plea agreement to trial counsel, who assured him "that his client would like to plead."

2  4/26/96 RT 2.

3  A second status hearing was held on April 30. Trial counsel told the court:

4  I had been working for quite a few days with Mr. Wong, getting a
   plea agreement, and we had started approximately two weeks

5  before on various terms. I had discussed the terms, as they
   evolved, with Mr. Guizar, and Mr. Guizar is very adamant in just a

6  few areas . . . . [T]he plea agreement did show up Thursday right
   around 12:00 o'clock.

7

   However, in order to arrive at the parameters of the original, if you

8  will pardon the expression, deal, quote, unquote, original plea
   agreement, some very substantial changes had - - were made by the

9  Government . . . . And I had not had any chance to discuss those
   with Mr. Guizar. And Mr. Wong . . . bent over backwards to try to

10 come up with an acceptable format which comported with the law,
   . . . I had the responsibility to explain the thing to Mr. Guizar . . . .

11

   [B]ecause of the . . .futility of the appearance without making an

12 explanation to Mr. Guizar of a sufficient length and opportunity,
   [Mr. Wong] was going to continue it . . . .

13

   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

14

   I came up yesterday and I spent almost two hours with Mr. Guizar

15 explaining the agreement that we have.

16 4/30/96 RT 1-3. The court and counsel that discussed a pending motion to dismiss. Counsel for

17 the government noted that, "Mr. Benninghoff and myself will try to fine-tune what's left to be

18 done on the plea agreement . . . ." Id. at 6.

19 The record discloses nothing else about any negotiations or plea offers. What it

20 does reflect is that after trial, movant "continue[d] to maintain his innocence in this case with

21 regard to the methamphetamine" in his interview with the probation officer. [Original]

22 Presentence Report (PSR) ¶ 21.

23 In preparation for the evidentiary hearing before this court, counsel interviewed

24 trial counsel Benninghoff and provided his declaration with one of her status memos. Mr.

25 Benninghoff avers that he has reviewed a number of documents, including movant's § 2255

26 motion and the transcripts of the two status hearings held in the trial court but that he cannot

14

recall any specifics of his representation of movant as the result of continuing health problems. Benninghoff Decl. ¶¶ 4-5. He did aver, however, that he "would never assure any one that they could receive a treaty transfer and to my recollection I have never done so." Id. ¶ 8.

Counsel informed the court that she had asked Mr. Benninghoff for his files; that he informed her he had given his files to the State Bar during the disciplinary proceedings against him; and that the Bar informed her it does not have his files. 8/14/06 RT 44.

Moreover, at the evidentiary hearing, William Wong, counsel for the government, informed the court that his only recollection of any plea negotiations was that during a court appearance "pretty close to trial," when movant was present with counsel, he asked Mr. Benninghoff if he was "sure [movant] doesn't want to resolve this case and he said, no, he's innocent. . . . Something to that effect." 8/14/06 RT 46-47.

At the evidentiary hearing, movant testified that he was aware he would receive a prison sentence for the marijuana; that he was interested in working out a plea bargain; that Mr. Benninghoff did not bring him a written offer, but discussed an offer with him, an offer of five years. 8/14/06 RT 54, 66. Movant said he told his lawyer he wanted the deal. 8/14/06 RT 66.

After the April 30 status hearing, movant told Mr. Benninghoff he wanted to plead to the indictment. 8/14/06 RT 54-55. When trial began, he did not mention the plea again because Mr. Benninghoff told him that "they didn't have enough proof to find me guilty." 8/14/06 RT 67. He believed that his attorney was doing what was best for him. 8/14/06 RT 71.

On cross-examination, movant insisted he was not guilty of the methamphetamine charges, though he "was becoming aware that something bad was happening . . ." 8/14/06 RT 56. Movant testified that he had not been part of a conspiracy to distribute methamphetamine and that "possibly, yes" he was guilty of the three counts of distribution of methamphetamine, because "I had a notion of what was happening." 8/14/06 RT 58-59. When pressed, he said, "I was found guilty, and then I was guilty." When asked directly, movant at first said he did not distribute methamphetamine as charged in counts two and three, but then said he had. 8/14/06 RT 61-62.

On redirect examination, movant said he believed he was guilty of counts two and three because the jury found him guilty. 8/14/06 RT 69. He reiterated his claim that he "had a notion" of what was going on when Cruz met with the undercover officers and so wanted to plead guilty to avoid the possibility of a life sentence. 8/14/06 RT 69-70. He did not want to cooperate, however, because he "didn't have a lot to cooperate with." Id.

Movant's testimony ended with his observation that his guilt of the charges was based "on whatever the government wants to find me guilty of." 8/14/06 RT 73.

After the evidentiary hearing, counsel for the government located a copy of the plea agreement he had tendered to Mr. Benninghoff and provided it to the court and parties. It contemplated that movant would plead guilty to one charge of conspiracy to distribute methamphetamine and three counts of distribution of methamphetamine, to cooperate with the government and to agree not to contest the forfeiture of the entire $43,070 seized from the storage locker. In return, the government would seek a sentence of five years based on movant's cooperation. U.S.S.G. § 5K1.1; CR 222.

2. Analysis

Although there is no absolute right to plead guilty, when plea negotiations are undertaken, they are a critical stage of criminal proceedings, triggering the right to the effective assistance of counsel. United States v. Preciado, 336 F.3d 739, 743 (8th Cir. 2003) (no absolute right to have a guilty plea accepted); Turner v. Calderon, 281 F.3d 851, 879 (9th Cir. 2002) (critical stage of the proceedings); United States v. Alvarado-Arriola, 742 F.2d 1143, 1144 (9th Cir. 1984) (no absolute right to plead guilty). The Supreme Court has held that Strickland's two-part test applies to challenges to attorney competence during the plea process: the first prong is "nothing more than a restatement of the standard of attorney competence already set forth" while "the second, or 'prejudice' requirement . . . focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." Hill v. Lockhart, 474 U.S. 52, 58-59 (1985).

Generally, challenges to attorney competence in the plea process focus on counsel's alleged failure to convey plea offers or adequately to explain a defendant's exposure, which leads him to reject a favorable plea offer. United States v. Faubion, 19 F.3d 226, 229 (5th Cir. 1994) (noting the "originality of [the] claim" that counsel was ineffective for taking the case to trial instead of recommending that defendant plead guilty as charged and seek a reduction for acceptance of responsibility); see also, e.g., United States v. Day, 285 F.3d 1167, 1172 (9th Cir. 2002) ("incompetent advice resulting in a defendant's rejection of a plea offer can constitute ineffective assistance of counsel"); United States v. Blaylock, 20 F.3d 1458 (9th Cir. 1994) (defendant alleged counsel failed to inform him of plea offer; case remanded for hearing).

This situation is different: movant does not claim he was unaware of the offer tendered by Mr. Wong. Instead, at hearing, he claimed he was willing to accept that offer and thereafter willing to plead "straight up" to the indictment in hopes of securing a reduction in his guidelines sentence for acceptance of responsibility. If movant's version were true, it might support a finding that Mr. Benninghoff did not act as a reasonably competent attorney during the plea negotiation process. See United States v. Rashad, 396 F.3d 398, 402-03 (D.C. Cir. 2005) (remanding for further proceedings when trial counsel conceded he had not told defendant he could plead to the indictment and ask for a reduction in sentence for acceptance of responsibility).

The record does reflect that Mr. Benninghoff and Mr. Wong were attempting to work out a plea agreement acceptable to both sides, but that movant was "very adamant" in "just a few," unspecified areas. 4/30/96 RT 1-3. At the evidentiary hearing on this motion, movant characterized his resistance to the plea arising from his reluctance to cooperate, because he would have little to provide. 8/14/06 RT 70. Nevertheless, this court does not find movant's version of these events to be credible.

When a court has determined that a trial counsel has failed adequately to convey the substance of a plea offer to a defendant, that court resolves the question of prejudice by determining whether the defendant would have accepted the plea rather than stand trial. Hill, 474

U.S. at 59.  One factor often undercutting a successful showing is the defendant's claim of

innocence.  See, e.g., Goudie v. United States, 323 F.Supp.2d 1320, 1335-36 (S.D. Fl. 2004).  As

the Court of Appeals for the Eighth Circuit has observed:

> Sanders denied his guilt at the time of his arrest, he testified at his
> first trial that he was completely innocent, and he failed to raise at
> his sentencing hearing any of the concerns raised in his § 2255
> motion.  A defendant who maintains his innocence at all the stages
> of his criminal prosecution and shows no indication that he would
> be willing to admit his guilt undermines his later § 2255 claim that
> he would have pleaded guilty if only he had received better advice
> from his lawyer.

Sanders v. United States, 341 F.3d 720, 723 (8th Cir. 2003).  There is little logical difference

between a defendant's claim that he would have pleaded guilty if he had been better advised and

the instant claim, that defendant told his lawyer he wished to plead to the indictment but was

ignored; protestations of innocence suggest that later claims of willingness to plead are self-

serving.

And so in this case.  At trial, movant acknowledged that the marijuana was his, but

denied being involved with methamphetamine.  Garcia-Guizar, 160 F.3d at 515.  He told the

probation officer that he was innocent "with regard to the methamphetamine."  PSR ¶ 21.

After the initial sentencing in this case, Mr. Benninghoff and his office were

relieved as counsel and the federal defender's office was appointed.  Ann McClintock, Assistant

Federal Defender, was assigned to the appeal.  She noted that movant told her that the marijuana

was his, but that he was innocent as to the methamphetamine charges.  8/14/06 RT 35.

At the evidentiary hearing before this court, movant still hedged when asked

whether he was guilty of the methamphetamine-based offenses: he said he was only "becoming

aware that something bad was happening; that he was "possibly" guilty of these charges because

he "had a notion" about the transactions and that he was guilty of those charges because the jury

found him guilty.  8/14/06 RT 56, 58-59, 69.  Movant's inability to admit guilt even during the

/////

§ 2255 proceedings destroys the credibility of his claimed willingness to plead guilty to the methamphetamine charges in order to secure the reduction for acceptance of responsibility.

Other factors contribute to this conclusion. Before including this claim in the § 2255 motion, movant appeared at two sentencing hearings, at least one probation interview, and at least one interview with appellate counsel, Ms. McClintock, but said nothing about his purported willingness to plead to the indictment without a plea agreement. In fact, Ms. McClintock testified that when she visited him in Sacramento County Jail, she "wanted to find out what concerns he had about trial counsel's performance . . ., " yet she did not testify that movant complained about Mr. Benninghoff's failure to convey his willingness to plead to the court or to Mr. Wong. 8/14/06 RT 12-13. Indeed, movant did not testify that he brought these concerns to anyone before he secured the assistance of a writ writer to prepare this motion to vacate his sentence.[5]

Accordingly, this court finds that movant did not tell Mr. Benninghoff that he wished to plead guilty to the indictment in order to secure a reduction in his guidelines sentence for acceptance of responsibility.

F. Ineffective Assistance Of Appellate Counsel--Failure To Advise Of The Possibility Of Higher Sentence On Remand (Ground Four)

1. Factual Background

As noted above, although one of the methamphetamine counts and a portion of the forfeiture allegation were reversed on appeal, movant ultimately received a longer sentence on remand because the probation officer recalculated the guidelines sentence by relying on the quantity of actual methamphetamine rather than on the mixture, as he had when he prepared the original presentence report. RPSR ¶ 23. The officer noted that the original calculations were incorrect in light of note (B) to the drug quantity table at U.S.S.G. 2D1.1(c). Id. Accordingly, he

---

[5] Although the motion is signed by movant "in propria persona," the reply is co-signed by "John Robert Sargent, Jr." as being "on the brief." Reply at 60.

found the base offense level to be 32 rather than 28.  In the original presentence report, he

recognized that he could calculate the base offense level by using the weight of the pure

methamphetamine rather than the mixture, but declined to do so "to avoid unncecessary

controversy in this case."  PSR ¶ 25; compare RPSR ¶ 23.

In the declaration in support of his motion to vacate, movant states that his

appellate attorneys did not discuss with him the possibility of an increased sentence after remand

of a successful appeal.  Garcia Decl. ¶ 10.

At the evidentiary hearing on the matter, appellate counsel McClintock testified

that neither her file nor her office computer systems contained a letter advising movant of the

dangers of an increased sentence, but suggested that if she was aware of facts that would increase

a person's sentence after appeal, she would have relayed that information to the client.  8/14/06

RT 15, 16.  She testified that her "generic advice" in 1996 was that if a case was remanded for

resentencing,

> the sentencing options were the same that they were before, so
> whatever the statutory maximums were, but that under North
> Carolina v. Pearce, a Supreme Court case, that there would be a
> presumption of vindictiveness that would protect you from getting a
> greater sentence than you got the first time.

Id. at 16.  Ms. McClintock was aware that the probation officer had not converted the

methamphetamine amounts from mixture to pure in calculating the offense level, but it was not

the first time she had seen a mixture of, rather than pure, methamphetamine used to calculate the

offense level.  Id. at 33.  She noted:

> I was aware that it was something that could have increased his
> sentence. [¶] . . . I don't remember communicating that to him
> though, and the reason, as we put in the briefing regarding the re-
> sentencing hearing, is I didn't view that as a mistake.  That was a
> decision that in my experience was a common practice in the
> Eastern District Probation Office.

Id. at 17.  She acknowledged the possibility that she had advised movant that he faced a longer

sentence on remand, but she reiterated that she probably told him that there would be a

presumption that any longer sentence would be vindictive and therefore unconstitutional. <u>Id</u>. at 27, 39.  She believed that the presumption applied if "there was nothing new."

> So that if Mr. Garcia Guizar had gone off and done nefarious things while in custody, or that if we found out about additional information about his criminal history that was not known, or things like that, that might justify a longer sentence.

> I have no recollection of giving him that explanation in that kind of detail.

<u>Id</u>. at 27-28.  She agreed that movant "wanted to challenge what had happened to him," but could not say his determination was "regardless of any sentencing issue." <u>Id</u>. at 36.  She concluded that she had neither a tactical nor a strategic purpose in advising him as she did. <u>Id</u>. at 39.

    2. <u>Analysis</u>

The <u>Strickland</u> standards apply to appellate counsel as well as trial counsel, but the more typical claim is based on appellate counsel's failure to raise certain issues on appeal. <u>Smith v. Murray</u>, 477 U.S. 527, 535-36 (1986); <u>Miller v. Keeney</u>, 882 F.2d 1428, 1433 (9th Cir. 1989); <u>see</u> <u>Smith v. Stewart</u>, 140 F.3d 1263, 1274 n.4 (9th Cir. 1998) (counsel not required to file "kitchen-sink briefs").

In <u>United States v. Duso</u>, 42 F.3d 365, 368-69 (6th Cir. 1994), the Sixth Circuit cautioned "that it is possible for the appeal of a sentence to result in a Pyrrhic victory," because of the "labyrinthian" nature of the sentencing guidelines:

> If the district judge errs in favor of the defendant, however, the defendant bears the risk that the error may be corrected against the defendant's favor. This must be anticipated when the decision is made whether to appeal.

Generally, an attorney's miscalculation based on the sentencing guidelines, which leads to a longer sentence, may constitute ineffective assistance of counsel. <u>Glover v. United States</u>, 531 U.S. 198, 202-04 (2001).

In this case, however, appellate counsel recognized that the probation officer had erred in movant's favor in determining the base offense level, yet she did not explain this to

movant nor even, it appears, suggest to him that there was a potential problem with the manner in which the sentence was calculated. Her "generic advice" was that if partially successful on appeal, movant faced the same statutory maximums on resentencing, but that in practice a longer sentence would be vindictive and unconstitutional, unless movant had misbehaved in prison or had additional criminal history not known at the time of the original sentencing. The question is whether this advice was "outside the wide range of professional competent assistance." Strickland, 466 U.S. at 690.

In North Carolina v. Pearce, 395 U.S. 711 (1969), the Supreme Court recognized that while there is no violation of the double jeopardy clause when a longer sentence is imposed after a retrial, the due process clause "requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial." Id. at 725. The Court continued that a longer sentence following retrial must be "based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding" and the "reasons for [the longer term] must affirmatively appear." Id. at 726.

After Pearce, the Supreme Court began to limit the reach of the rule. For example, in Colten v. Kentucky, 407 U.S. 104, 116-17 (1972), the Court considered whether a longer sentence following a de novo trial in a two-tier system of trial courts violated due process because "the hazard of being penalized for seeking a new trial, which underlay the holding in Pearce" was not inherent in the two tier system.

/////

/////

/////

/////

/////

/////

In Chaffin v. Stynchcombe, 412 U.S. 17 (1973), after a successful appeal the defendant returned for retrial before a different judge and jury and received a harsher sentence. The Court rejected the idea that the Pearce presumption of vindictiveness applied:

> Pearce was not written with a view to protecting against the mere possibility that, once the slate is wiped clean and the prosecution begins anew, a fresh sentence may be higher for some valid reason associated with the need for flexibility and discretion in the sentencing process. The possibility of a higher sentence was recognized and accepted as a legitimate concomitant of the retrial process.

Id. at 25.

The Court returned to the idea of vindictive sentencing in Texas v. McCullough, 475 U.S. 134 (1986). In McCullough, a jury imposed the first punishment while a judge imposed a higher sentence following that judge's grant of a new trial. Id. at 135. The sentencing judge prepared findings in support of her sentence, noting that only on retrial was it revealed that the defendant had been paroled only four months before committing the new crime and that, had she fixed the first sentence, she would have chosen a harsher sentence than the jury had. Id. at 136. The Court did not find Pearce controlling:

> Beyond doubt, vindictiveness of a sentencing judge is the evil the Court sought to prevent rather than simply enlarged sentences after a new trial. The Pearce requirements thus do not apply in every case where a convicted defendant receives a higher sentence on retrial. . . . [W]e have restricted application of Pearce to areas where its "objectives are thought most efficaciously served." Accordingly, in each case, we look to the need, under the circumstances, to "guard against vindictiveness in the resentencing process."

Id. at 138 (internal citations omitted). The Court ultimately found no vindictiveness because, among other reasons, when different sentencers impose the disparate sentences, "a sentence 'increase' cannot truly be said to have taken place." Id. at 140. It also found that the judge supported her sentence with sufficient reasons and noted that "[n]othing in the Constitution requires a judge to ignore 'objective information . . . justifying the increased sentence.'" Id. at 142.

1    In Alabama v. Smith, 490 U.S. 794 (1989), the Court returned to the scope of the

2  Pearce rule in a situation in which the sentence imposed on a defendant following a guilty plea

3  was increased following his successful attack on the plea and subsequent retrial. Id. at 795.  The

4  Court observed that Pearce had not "announce[d] a rule of sweeping dimension;" therefore only

5  when there is a reasonable likelihood that the increased sentence was the product of vindictiveness

6  would the presumption apply.  Id. at 799.  It rejected the application of the presumption in that

7  case because in general a sentencing judge has more information after trial than after a guilty plea

8  and because in this situation, the trial court was not "'do[ing] over what it thought it had already

9  done correctly.'"  Id. at 801-02 (quoting Colten, 407 U.S. at 117).

10    The Supreme Court's disavowal of any broad "rule of sweeping intention" flowing

11  from Pearce, its consistent explanation that the presumption applied only in those situations that

12  presented a reasonable likelihood that increased punishment was vindictive, its unwavering

13  recognition that not all longer sentences could be deemed vindictive, and its recognition that

14  longer sentences based on objective information were permissible undercuts Ms. McClintock's

15  generic advice that a longer sentence in the absence of post-sentencing misbehavior or a newly-

16  revealed criminal record was presumptively unconstitutional.

17    Ms. McClintock was aware that the probation officer's guidelines calculations

18  were based on an incorrect interpretation of law, a position supported by Ninth Circuit precedent.

19  United States v. Bressette, 947 F.2d 1361 (9th Cir. 1991) (the footnote to USSG 2D1.1 is clear

20  that for guideline purposes, drug quantity was to be determined on the basis of pure

21  methamphetamine rather than a mixture).  An attorney acting as a reasonably competent advocate

22  would have concluded that this sort of miscalculation was the type of "objective information" that

23  would justify the increased sentence.  Moreover, because the original sentence was based on a

24  miscalculation, the presumption of vindictiveness would not arise because the court was not asked

25  to redo what it had thought it had done correctly the first time.

26  /////

Accordingly, because of this inadequate advice, movant could not make an informed determination about whether to pursue the appeal.

To prevail, however, movant must show prejudice. There is little law on the question of proving prejudice when counsel's inadequate advice has deprived a defendant of the information he needs in order to make an informed decision whether to pursue an appeal. A logical analogy, however, is to the guilty plea cases. As noted above, when a defendant has shown that his lawyer failed to advise him adequately during the plea process, he must also show that but for the insufficient advice, he would have pleaded guilty. Accordingly, this court must determine whether movant would have proceeded with the appeal had he known of the potential for a Pyrrhic victory. See Purdy v. United States, 208 F.3d 41, 45 (2d Cir. 2000) (during plea process, counsel must "usually inform the defendant of the strengths and the weaknesses of the case against him, as well as the alternative sentences to which he will most likely be exposed").

As noted above, movant is still reluctant to admit his guilt as to the methamphetamine charges. Moreover, he told Ms. McClintock that he was not guilty of the methamphetamine charges and wanted to challenge what had happened to him.

Nevertheless, this court does not find these factors controlling. After observing movant's testimony and reading his voluminous pleadings in this case, this court finds that movant is motivated to secure the shortest sentence possible. It is plausible that movant would take his chances at trial, especially when his co-defendant was set to testify that movant was not the drug supplier. It also is plausible that after conviction, after the jury had rejected his claims of innocence, he would be motivated to proceed in the manner most likely to minimize his sentence.

Several other courts have recognized that a defendant's protestations of innocence do not totally foreclose a court from determining that a plea bargain would have been acceptable if properly presented. Thus, in Pham v. United States, 317 F.3d 178, 183 (2d Cir. 2003), the Court of Appeals for the Second Circuit noted that "where the disparity in potential sentences is great, a finder of fact may infer that defendants who profess their innocence will still consider a plea."

See also Kates v. United States, 930 F.Supp. 189, 192 (E.D. Pa. 1996) ("utterly intransigent"

defendants often "cave in when confronted with the ugly reality of what probably would happen to

[them] if [they] did not" plead). Similarly, this court finds that had movant been aware of the

"ugly reality" of an additional thirty three months in prison, he would have abandoned his appeal.

The final question to be resolved is the appropriate remedy for this Sixth

Amendment violation. In United States v. Morrison, 449 U.S. 361 (1981), the Supreme Court

held:

> Cases involving Sixth Amendment deprivations are subject to the
> general rule that remedies should be tailored to the injury suffered
> from the constitutional violation and should not unnecessarily
> infringe on competing interests.
>
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
>
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
>
> Our approach has thus been to identify and then neutralize the taint
> by tailoring relief appropriate in the circumstances to assure the
> defendant the effective assistance of counsel and a fair trial.

Id. at 364, 365. Relying on Morrison, the Court of Appeals for the Second Circuit has held:

> That remedy is one that as much as possible restores the defendant
> to the circumstances that would have existed had there been no
> constitutional error.

United States v. Carmichael, 216 F.3d 224, 227 (2d Cir. 2000). In Carmichael, counsel had failed

adequately to advise the defendant about the proffered plea agreement, causing him to reject it

initially but ultimately plead guilty under a less favorable agreement. Id. at 225-26. The court

found the appropriate remedy would be to resentence the defendant to the term he would have

received had he been properly advised. Id. at 228; see also United States v. Williams, 372 F.3d

96, 111 (2d Cir. 2004) (same).

In Riggs v. Fairman, 399 F.3d 1179, 1184 (9th Cir. 2005), the Ninth Circuit

recognized the district court's "considerable discretion in fashioning a remedy" consonant with

the injury caused by the Sixth Amendment violation and recognized that the court "must consider

the unique facts and circumstances of the particular case." In that case, the court found that the remedy for counsel's inadequate advice during the plea process might be a reinstatement of the original offer or a return of the parties to the plea negotiation process. Id.; see also Hoffman v. Arave, 455 F.3d 926, 942 (9th Cir. 2006) (proper remedy is to reinstate the plea offer when defendant is deprived of opportunity to make a reasoned decision about the plea).

Finally, in Mapes v. Tate, 388 F.3d 187 (6th Cir. 2004), the court considered the remedy for counsel's failure to include a potentially meritorious issue on appeal and found the appropriate remedy to be remand to the state courts to grant a new appeal, because this would neutralize the constitutional violation.

The instant case does not square neatly with any of these examples, though it is perhaps closer to those involving the lost opportunity to enter into a plea than it is to the failure to include an issue on appeal. Nevertheless, this court does not have the authority to vacate the Court of Appeals' decision and allow movant to determine, based on proper advice, whether to pursue the appeal. To restore movant "to the circumstances that would have existed had there been no constitutional error" on the facts and circumstances of this case would be to reinstate the sentence imposed before the appeal and remand: a term of 135 months and no fine. Because the remedy should provide no windfall to movant, however, restoring him to the pre-violation circumstances means that the entire $43,070 listed in count six of the indictment is subject to forfeiture. See Waller v. Georgia, 467 U.S. 39, 50 (1984) (granting new trial to defendant would be windfall when violation of right to public trial was limited to pretrial suppression hearing).

G. Motion For The Return Of Property (Docket No. 171)

In light of the resolution of the motion to vacate the sentence, this motion should be denied.

IT IS HEREBY ORDERED that the Clerk of the Court serve a copy of these findings and recommendations directly on movant and on Ana Garcia at the address listed on her pleadings in the file.

27

IT IS HEREBY RECOMMENDED that:

1. Movant's April 10, 2002 motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 be granted only as to his claim that he did not receive the effective assistance of appellate counsel, his sentence be modified to a term of 135 months and no fine, and the $43,070 seized from his storage locker be subject to forfeiture;

2. The motion for return of property (docket no. 171) be denied; and

3. The Clerk of the Court be directed to close the companion civil case, No. Civ. S-02-0749 GEB KJM.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time waives the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: April 11, 2007.

_____
U.S. MAGISTRATE JUDGE

2

garc0411.257

28